<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE (J.T.A.),<br><br>                  Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC. *et al.*,<br><br>                  Defendants. | Civil Action No: 25-00687 (SDW) (JSA)<br><br>**OPINION**<br><br>September 24, 2025 |

**WIGENTON**, District Judge.

      Before this Court is Defendants Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Ramada Worldwide Inc.'s ("Moving Defendants") Motion to Dismiss (D.E. 9) Plaintiff Jane Doe (J.T.A.)'s Complaint (D.E. 1 ("Compl.")). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the motion to dismiss is **DENIED**.

**I.    FACTUAL BACKGROUND**

      Plaintiff alleges that from 2013 through 2015, she was trafficked at the Orlando Ramada Inn located at 7500 Augusta National Dr, Orlando, FL 32822 (the "Subject Ramada"). (Compl. ¶¶ 16, 26.) She states that several trafficking victims had been exploited at the Subject Ramada before her, and that there were ample and obvious "red flags" which did or should have put Defendants on notice of what was taking place. (*Id.* at ¶¶ 28–32.) These include, but are not limited to, "visible injuries on [Plaintiff's] face and body, nervous and fearful demeanor, signs of paranoia, disorientation, refusal to make eye contact, limited access to clothing, appearing under

1

the influence of illegal drugs, inability to move around the hotel or communicate with others, submissive behavior with her traffickers, lack of personal possessions, and signs of sleep deprivation and poor hygiene." (*Id.* at ¶ 28.) Plaintiff refers to several online reviews of the Subject Ramada from around the timeframe of the alleged sex trafficking which "show the pervasiveness of sex trafficking before and well after [she] was trafficked." (*Id.* at ¶ 65.)

Plaintiff further alleges that Moving Defendants "knew or should have known about the sex trafficking pervasive at [the] Subject Ramada based on obvious indicators of this activity." (*Id.* at ¶ 64.) In addition to alleging obvious signs of sex trafficking, Plaintiff alleges that Moving Defendants knew of these signs because they required "hotel staff, management, and franchisees to report suspected criminal activity at the Subject Ramada, including suspected sex trafficking." (*Id.* at ¶ 74.) She also states that Moving Defendants directly "observed obvious 'red flags' of numerous instances of sex trafficking occurring at the Subject Ramada based on their supervision and monitoring of the property." (*Id.* at ¶ 76.) Despite being franchisors, Plaintiff maintains that Moving Defendants allegedly directly operated the hotels, including by "controll[ing] all details of the guest reservation, check-in, and payment processes," controlling "a brand-wide 'do not rent' system," and "restrict[ing] the ability of franchisee [sic] and staff to refuse or cancel a reservation," among other involvement. (*Id.* at ¶ 93.) Accordingly, Plaintiff alleges Moving Defendants "knew or were willfully blind to the fact that [Plaintiff] was being trafficked." (*Id.* at ¶ 91; *see also id.* at ¶ 95.)

On January 23, 2025, Plaintiff filed the instant complaint. In addition to the Defendants mentioned above, the complaint also names Quest Airport Hotel, LLC (the "Franchisee Defendant"), who allegedly owns the Subject Ramada. (*Id.* at ¶ 17.) The Complaint contains three causes of action, all asserting violations of the Trafficking Victims Protection Reauthorization Act

2

("TVPRA"), 18 U.S.C. §§ 1591, 1595. Count I alleges that Franchisee Defendant is liable as a perpetrator; Count II alleges that all Defendants are liable as beneficiaries and Count III asserts that Moving Defendants are vicariously liable for the acts of their franchisees and those franchisees' subagents. (*Id.* at ¶¶ 125–138.)

## II.   LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

At the outset, this Court notes that this case involves many of the same parties, counsel, and legal arguments as prior cases recently decided by this Court. *See Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-8174, 2025 WL 1166519 (D.N.J. Apr. 21, 2025) and *Doe M.J.J. v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2025 WL 342092 (D.N.J. Jan. 30, 2025). The legal issues raised in the present motion to dismiss are materially similar, and this Court's analysis herein largely tracks its reasoning in those earlier opinions.

The TVPRA criminalizes, in relevant part,

> Knowingly . . . recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], . . . maintain[ing], patroniz[ing], or solicit[ing] . . . a person; or . . . benefit[ting] . . . from participation in a venture which has engaged in [any of those acts] knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act.

18 U.S.C. § 1591(a). It also permits victims of such acts to seek civil remedies against "perpetrator[s]" or anyone who "knowingly benefits or attempts or conspires to benefit … from participation in a venture which that person knew or should have known has engaged in" the acts described in § 1591. 18 U.S.C. § 1595(a). Here, Plaintiff has adequately pled that she was a victim of sex trafficking. (Compl. ¶¶ 24, 26 ("[Plaintiff] was trafficked through force, fraud and coercion by her traffickers and required to engage in numerous commercial sex acts for their financial benefit."); *see Jane Doe (C.J.) v. Albert Cotugno, Jr.*, No. 23-2973, 2024 WL 4500994, at *3 n.6 (D.N.J. May 16, 2024).) As explained below, she has also adequately pled Moving Defendants' direct and vicarious liability under the TVPRA.

A. **Beneficiary Liability**

To state a claim for beneficiary liability under the TVPRA, Plaintiff must plead that Defendants "(1) 'knowingly benefit[ed] financially or by receiving anything of value, (2) from participation in a venture, (3) that [D]efendant[s] knew or should have known has engaged in sex

4

trafficking under section 1591.'" *Cotugno*, 2024 WL 4500994, at *3 (first alteration in original) (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).  As to the first element, Plaintiff states that Moving Defendants generated revenue by renting the hotel rooms to Plaintiff's traffickers and others involved in the venture. (Compl. ¶ 105.) "[R]eceiv[ing] a share of the profits from room rentals" is sufficient to establish a knowing benefit under the TVPRA. *Cotugno*, 2024 WL 4500994, at *3 (citing *A.W. v. Red Roof Inns., Inc.*, No. 21-4934, 2022 WL 17741050, at *6 (S.D. Ohio Dec. 16, 2022); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020)).  Therefore, Plaintiff has met this element for the purposes of beneficiary liability under the TVPRA.

Next, Plaintiff sufficiently pleads actions constituting participation in a venture. "[A] legal business entity — such as a hotel or a franchise relationship — can constitute a 'venture' for purposes of the statute when sex trafficking occurs within its operations and the defendant knowingly benefits from its continued existence." *Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-8174, 2025 WL 1166519, at *3 (D.N.J. Apr. 21, 2025) (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)).

Here, Plaintiff alleges that Moving Defendants engaged in in two ventures—one with the traffickers (Compl. ¶¶ 103–11), and one with the Franchisee Defendant (*id.* at ¶¶ 112–16).  As to the venture with the traffickers, Plaintiff states that Moving Defendants continuously "rent[ed] rooms to traffickers, including [Plaintiff's], after they knew or should have known that victims like [Plaintiff] were being subjected to unlawful trafficking," and "continued operating the hotel in a way that they knew or should have known would encourage traffickers to select the Subject Ramada as venues for their illegal activities." (Compl. ¶ 108).  Specifically, she pleads that they:

> allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments

5

> and not requiring identification from appropriate parties . . . provided additional services to traffickers (including [Plaintiff's] trafficker), including but not limited to, internet access, excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms; [and] these traffickers reduced their operating burden because they did not need to make significant efforts to conceal their activities from the staff at the [hotel] but, instead, freely made requests that would facilitate their trafficking activities without concern for detection or interference by the staff.

(*Id.* at ¶ 109). These allegations — accepted as true at this stage — are sufficient to demonstrate participation in a venture.

Plaintiff's allegations as to the venture between Moving Defendants and the Franchisee Defendants are also sufficient to withstand dismissal. As asserted by Plaintiff, both Moving Defendants and Franchisee Defendants shared a goal of maximizing revenue, such as gross room revenue, and did so by facilitating widespread sex trafficking at the Subject Ramada. (Compl. ¶¶ 113-14.) Specifically, Plaintiff states that Moving Defendants "provided Franchisee Defendants with operational support, use of trademarks, marketing services, and other resources to operate the Subject Ramada in a way that they knew or should have known was engaging in violations of 18 U.S.C. § 1595(a)." (Compl. ¶ 116.) This business arrangement is sufficient to be considered a venture under the TVPRA. *See Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2025 WL 342092, at *4 (D.N.J. Jan. 30, 2025) (citing *D.K. v. Red Roof Inns, Inc.*, No 22-3786, 2024 WL 1332195, at *5 (S.D. Ohio Mar. 28, 2024), *amended on other grounds sub nom*; *In re Hotel TVPRA Litig.*, No. 21-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024) (deciding that the franchisor defendant which "profited, failed to implement policies, and maintained expansive control over the hotel operation standards" participated in a venture with franchisees).

As to the third element, Plaintiff's allegations are also sufficiently pled at this stage to establish that Moving Defendants had actual or constructive knowledge that the ventures engaged

in her sex trafficking. Plaintiff asserts that Moving Defendants knew of the signs of sex trafficking and its pervasiveness in the hotel industry, especially at Wyndham-branded properties and the Subject Ramada (Compl. ¶¶ 33–49, 52–66), and that based on that knowledge, they should have known of sex trafficking occurring as to her. Additionally, Plaintiff pleads that Moving Defendants knew or should have known of about her trafficking because of their policies that required hotel staff to report suspected sex trafficking at the Subject Ramada (Compl. ¶¶ 74–75, 80.) Plaintiff further states that Moving Defendants observed several obvious "red flags" of sex trafficking based on their supervision and monitoring of the Subject Ramada. (*Id.* at ¶¶ 75–78, 80–81); *see Cotugno*, 2024 WL 4500994, at *4–5 (finding, at motion to dismiss stage, that allegations of cash payments, male visitors at unusual hours, and other signs were sufficient to establish actual or constructive knowledge as to sex trafficking); *see also E.B. v. Howard Johnson by Wyndham Newark Airport*, No. 21-2901, 2023 WL 12053001, at *5–10 (D.N.J. Dec. 29, 2023). At this stage, interpreting the complaint most favorably to Plaintiff, these allegations are sufficient to establish that Moving Defendants should at least have known that the ventures may have been engaged in sex trafficking as to Plaintiff.

Moving Defendants dispute Plaintiff's allegations and argue that she fails to plausibly allege participation in a TVPRA venture. (D.E. 9-1 at 5.) Moving Defendant's reliance on the Seventh Circuit's decision in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), is unpersuasive. This case is distinguishable in several key respects, particularly regarding the factual allegations. Importantly, *G.G.* is a Seventh Circuit decision, and while it may offer persuasive authority regarding the TVPRA, it is not binding on this Court in the Third Circuit. As such, the factual and legal framework of that decision is not directly controlling here. Contrary to Moving Defendants' assertions, Plaintiff alleges direct involvement in the rental of rooms and

7

control over hotel operations related to the detection and response to sex trafficking, thereby supporting beneficiary liability at this stage in the litigation. For the same reason, Moving Defendants' argument that Plaintiff failed to adequately plead "actual or constructive knowledge" also fails.

### B. Vicarious Liability

Courts have recognized that vicarious liability may be imposed under § 1595(a) based on common law agency principles. *See J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *8; *A.B. v. Hilton Worldwide Holdings*, 484 F. Supp. 3d at 939. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (citing *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)). In hotel TVPRA cases similar to the instant matter, "[t]he hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties." *Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229, at *5 (D.N.J. Dec. 26, 2023).

Vicarious liability claims have survived motions to dismiss based on allegations that franchisors controlled "the mode and manner of the work ... [and] employee training," imposed "standardized and strict rules of operations, ... controlled pricing and reservations" and "regularly conducted inspections." *Id.*; *see A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 196 (E.D. Pa. 2020); *Cotugno*, 2024 WL 4500994, at *6 (holding allegations that franchisor "shared profits, standardized employee training and rules of operations, controlled pricing and reservations, regularly conducted inspections, provided operational support, and had the right to terminate any

8

franchisee ... that failed to comply with [franchisor's] requirements" sufficient to plead vicarious liability).

Here, Plaintiff has adequately pled a TVPRA violation by the Franchisee Defendants that can be imputed to Moving Defendants. Plaintiff alleges that Moving Defendants "subjected Franchisee Defendant to detailed standards and requirements regarding the operation of the Subject Ramada through the franchising agreement, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations." (Compl. ¶ 118.) Plaintiff also alleges that Moving Defendants mandated "training programs" for franchised hotel staff, "dictat[ed] the content of that training," "established detailed job descriptions for all positions in its branded properties and drafted numerous, detailed policies that ... dictated which positions must perform which tasks and how they must do so," "controlled channels for guests to report complaints or provide feedback regarding the subject property," "conducted frequent and unscheduled inspections of the subject property," (*id.* at ¶ 120) and retained the right to terminate franchising agreements "for failure to comply with policies that govern the means and methods used for day-to-day operations." (*id.* at ¶ 121.) These allegations are sufficient to establish that the Franchisee Defendants were Moving Defendants' agents, and Moving Defendants may be considered vicariously liable for the Franchisee Defendant's actions.

At this stage, the Court must draw all reasonable inferences in Plaintiff's favor. The allegations here do support a plausible theory that the Franchisee Defendants violated the TVPRA and that Moving Defendants may be vicariously liable for those violations. Accordingly, the Motion to Dismiss is denied as to a vicarious liability theory.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **DENIED**. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Jessica S. Allen, U.S.M.J.
      Parties